IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE I AND JOHN DOE II, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>EXCELA HEALTH, EXCELA HEALTH HOLDING COMPANY, INC., EXCELA HEALTH PHYSICIAN PRACTICES, INC., LATROBE AREA HOSPITAL INC., WESTMORELAND REGIONAL HOSPITAL, AND FRICK HOSPITAL,<br><br>Defendants. | Civil Action No.: 2:23-cv-833 |

## NOTICE OF REMOVAL

Defendants Excela Health, Excela Health Holding Company, Inc., Excela Health Physician Practices, Inc., Latrobe Area Hospital Inc., Westmoreland Regional Hospital, and Frick Hospital (collectively, Excela), by and through undersigned counsel, hereby give notice that this action, *John Doe I v. Excela Health*, Civ. No. 23CI01410 (Ct. Comm. Pl. Westmoreland Cty.), is hereby removed to this Court from the Court of Common Pleas of Westmoreland County, Pennsylvania, pursuant to 28 U.S.C. § 1442. In support thereof, Excela asserts the following:

### INTRODUCTION

1. Plaintiffs allege that Excela engaged in unlawful wiretapping and invaded their privacy by installing third-party source code for the Meta Pixel on Excela's public website.

2. Because the conduct challenged by Plaintiffs was undertaken pursuant to the federal government's extensive efforts to build a nationwide health information technology infrastructure

over the past two decades, this case is removable under the Federal Officer Removal statute. 28 U.S.C. § 1442.

3. At least two other courts have held that removal is proper under nearly identical circumstances. *See Doe I v. UPMC*, No. 20-cv-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, No. 20-cv-1581, 2020 WL 7705627, at *2–3 (N.D. Ohio Oct. 30, 2020).

**NATURE OF THE CASE**

4. On April 11, 2023, Plaintiffs John Doe I and John Doe I filed this action in the Court of Common Pleas of Westmoreland County, Pennsylvania.

5. Plaintiffs allege that Defendant Excela Health operates "hospital facilities" as well as a website, www.excelahealth.org, which includes "digital tools" that Excela "encourages patients to use . . . to seek and receive healthcare." Compl. ¶¶ 19, 20, 28, 30.

6. Excela "also maintains a patient portal, which allows patients to make appointments, access medical records, view lab results, and exchange communications with their health care providers." *Id.* ¶ 31.

7. Plaintiffs allege that they were "patient[s] of Excela Health" who "have visited Excela Health's website periodically at https://www.excelahealth.org/." *Id.* ¶¶ 19, 20, 187.

8. According to Plaintiffs, Excela installed software on the website, including the Meta Pixel and Google Tag Manager which, Plaintiffs allege, are "automatic re-routing mechanisms" generally which caused information that they characterize as "protected health information" (PHI) to be automatically transmitted to Meta Platforms, Inc. (formerly Facebook), Google, and "other third parties" when patients used the public website. *Id.* ¶¶ 32, 41, 65, 165.

9. Despite Plaintiffs' conclusory labels, their factual allegations reveal that the allegedly transmitted information is not PHI connected to a person's actual name, but instead consists of Internet-related metadata that enables the website to function, such as a webpage's Universal Resource Locator (URL) and alleged cookie identifiers. *Id.* ¶¶ 41–189.

10. Nonetheless, Plaintiffs speculate that because they used Excela's public website, Excela "captur[ed] their personal health information and disclos[ed] that information to Facebook and Google." *Id.* ¶ 187.

11. Plaintiffs bring claims for:

   a. Violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act (WESCA), 18 Pa. C.S. § 5701 *et seq*;

   b. Invasion of privacy—intrusion upon seclusion;

   c. Breach of fiduciary duty; and

   d. Unjust enrichment.

## VENUE

12. Removal to this District is proper because this Court embraces Westmoreland County, Pennsylvania. 28 U.S.C. § 118(c).

## BASES FOR REMOVAL

13. Removal is proper under the Federal Officer Removal statute.

14. The Federal Officer Removal statute permits removal where the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

15. The federal officer removal statute is to be broadly construed to allow defendants to remove whenever they are acting under color of federal office. *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994)); *see also Willingham v. Morgan*, 395 U.S. 402, 406 (noting that the scope of the federal officer removal statute "is not narrow or limited").

16. To remove a case under the statute, a defendant must show that (1) it is a "person" within the meaning of the statute; (2) it is "acting under a federal officer's authority;" (3) the claims are "for or relating to" conduct taken under color of that authority; and (4) the defendant can assert a "colorable federal defense." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016); *see also Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022); *see also O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 53 (D. Mass. 2008) (proper removal under federal officer removal statute).[1]

17. Plaintiffs' claims relate to conduct undertaken by Excela in furtherance of the federal government's Meaningful Use Program.

18. Since at least 2004, the federal government – through executive order, legislation, and regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology.

---

[1] When Congress amended § 1442(a)(1) in 2011 to reach removal based on a claim "for or relating to any act under color of [federal] office," *see* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545, the "addition of the words 'or relating to' in the 2011 revision of the statute . . . was intended to 'broaden the universe of acts that enable Federal officers to remove [suits] to Federal court." *Papp*, 842 F.3d at 813. Accordingly, the Third Circuit and other federal circuits, "have consistently given this requirement a broad reading and held that no causal link [between the official act and the plaintiff's alleged injury] is required." *Moore*, 25 F.4th at 35.

19.     The federal government has incentivized and directed providers that participate in the Medicare and Medicaid program (like Excela) to offer patients online access to their records, and to optimize patient engagement with their medical information.

20.     The federal government has also modeled the behavior it wants to see by creating a portal for Medicare beneficiaries and working with the same third-party services *with the same or similar "source code" at issue in this case*.

21.     Excela has dutifully assisted and followed the federal government's direction in this effort, including through some of the actions challenged by Plaintiffs here. In so doing, it has acted within the penumbra of federal action and office. Given this, and the Supreme Court's directive that the statute must be broadly construed, the requirements of the Federal Officer Removal statute are satisfied.

A.     **The ONC Creates Nationwide Health Information Technology in Conjunction with Private Sector Through the Meaningful Use Program.**

22.     In 2004, President Bush issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id.*

23.     In 2009, Congress codified the Office of the National Coordinator in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars to the Center for Medicare and Medicaid Services (CMS) to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id.* at 246.

24. As with President Bush's Executive Order, Congress tasked the National Coordinator with, *inter alia*, "updat[ing] the Federal Health IT Strategic Plan (developed as of June 3, 2008) to include specific objectives, milestones, and metrics with respect to": "(i) [t]he electronic exchange and use of health information and the enterprise integration of such information" and "(vii) [s]trategies to enhance the use of health information technology in improving the quality of health care." 42 U.S.C. § 300jj-11(c)(3)(A) (Strategic plan).

25. Consistent with its mandate, the ONC has published guidance for private providers to follow, including in five-year plans.

26. In the 2015–2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use."[2]

27. In the 2020–2025 plan, it noted that this has already happened, stating that "[f]ederal, state, and local governments, along with the private sector, have worked together to help digitize health information and healthcare."[3]

28. One critical aspect of this strategy is CMS's "Meaningful Use" program. 42 C.F.R. § 495.2–495.370; *see also* DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE & MEDICAID SERVICES, *Medicare and Medicaid Programs; Electronic Health Record Incentive Program*, 75 Fed. Reg. 44314 (Jul. 28, 2010).

29. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records. In introducing the final regulations, the agencies stated

---

[2]  ONC, Federal Health Information Technology Strategic Plan 2015-2020, available at https://www.healthit.gov/sites/default/files/9-5-federalhealthitstratplanfinal_0.pdf.

[3]  ONC, Federal Health Information Technology Strategic Plan 2020-2025 available at https://www.healthit.gov/sites/default/files/page/2020-10/Federal%20Health%20IT%20Strategic%20Plan_2020_2025.pdf.

that "[c]ertified EHR technology used in a meaningful way is one piece of a broader HIT infrastructure needed to reform the health care system and improve health care quality, efficiency, and patient safety." *Id.* at 44321.

30. Under this program, providers must meet certain criteria to receive full Medicare reimbursement.

31. As part of the program, the federal government directed providers to create interoperable patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records. *See* 42 C.F.R. § 495.20(f)(12)(i)(B) ("Beginning in 2014, provide patients the ability ***to view online***, download, and transmit information about a hospital admission." (emphasis added)); *see also* REBECCA MITCHELL COELIUS, *Get the Facts Regarding View, Download and Transmit 2014 requirements*, HealthITbuzz, The Latest on Health IT from the ONC, at 1 (Jan. 31, 2014) ("All providers and hospitals attesting to Meaningful Use in 2014 will need to implement the [view, download, and transmit] VDT capabilities for their patients. Those in Stage 1 will attest for ***access***, those in Stage 2 will attest for ***use***. The term 'online access' used in the VDT measure definitions refers to all three capabilities – view, download and transmit.").

32. The ONC has specified "how a patient portal helps achieve meaningful use requirements," as well as how a provider can "actively promote and facilitate portal use" and how providers can optimize such portals – explaining that they "must be engaging and user-friendly."[4]

---

[4] ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013), available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

33. The ONC has also issued a "Patient Engagement Playbook," which was described as "a tool for clinicians, health care practice staff, hospital administrators, and others who want to leverage health IT – particularly electronic health records (EHR) patient portals – to engage patients in their health and care." THE OFFICE OF THE NAT'L COORDINATOR FOR HEALTH INFORMATION TECHNOLOGY, *Patient Engagement Playbook* (last updated Apr. 17, 2019).

34. Regulations require health care providers to attest to the National Coordinator and to CMS on their progress with respect to this criterion in particular. *See* 45 C.F.R. § 170.315(e)(1)(i) (requiring reporting on "Patient engagement" for "[v]iew, download, and transmit to 3d party"; "EHR technology must provide patients (and their authorized representatives) with an online means to view, download, and transmit to a 3rd party the data specified below," including "[t]he Common [Meaningful Use] Data Set").

35. Regulations also provide for incentive payments for providers who reached certain levels of engagement with electronic health record use through the patient portal. *See* 42 U.S.C. § 1395w-4(o) (incentives for adoption and meaningful use of certified HER technology); *see also* C. Stephen Redhead, *The Health Information Technology for Economic & Clinical Health (HITECH) Act*, at 2 CONG. RES. SERV. (Apr. 27, 2009) (discussing various financial incentives).

36. In addition to this guidance, CMS has created its own portal, offering a model for private providers to follow.

37. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook.

38. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them.[5]

**B.    Excela Health Is A "Person" Under 28 U.S.C. § 1442(a)(1).**

39. Removal under the statute is permitted by "any person acting under [a federal] officer." 42 U.S.C. § 1442(a)(1).

40. Consistent with the Supreme Court's command that the statute be construed broadly, organizations, corporate defendants, and government entities have routinely been deemed "persons" who can remove actions under the statute. *See, e.g.*, *Papp*, 842 F.3d at 812 ("[W]e look to § 1 of Title I of the United States Code, which defines 'person' to 'include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.' Under this definition, Boeing, a corporation, is in legal fact a person."); *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 32 (1st Cir. 2022) (allowing removal by a corporation).

41. Because each Excela Defendant is a corporation, Compl. ¶¶ 8–13, they qualify as persons under that statute.

**C.    Excela Acted Under a Federal Officer.**

42. An entity is acting under a federal officer whenever it is engaged in "an effort to assist, or to help carry out, the duties or tasks of the federal superior" and is subject to "subjection, guidance, or control." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–52 (2007).

---

[5] *See generally* Medicare.gov Privacy Policy, available at https://www.medicaid.gov/privacy-policy/index.html (explaining that website users' "activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users "provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

43. To that end, the Federal Officer Removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Id.* at 147–49.

44. These requirements are met here because the federal government is incentivizing, regulating, monitoring, and supervising Excela's actions in the Meaningful Use program to meet the federal government's national priority of interoperable health information technology.

45. First, Excela (along with many other entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information.

46. The federal government itself has repeatedly acknowledged the private sector's essential role in this project, most recently stating that the federal government and private sector "have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

47. Second, in the absence of Excela's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission – and would likely do exactly that, as underscored by its efforts to digitize information and increase patient engagement with Medicare beneficiaries.

48. Third, the government has specified how to best enhance patient engagement, including through patient portals.

49. It has clarified how to generally design the portals and has told entities how best to market their online resources.

50. Furthermore, because the Meaningful Use program's incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes

Excela and comparable organizations not only to maintain public websites and/or patient portals, but also to achieve meaningful use of them.

51. And, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

52. Finally, the government has created an office dedicated to this endeavor, closely monitored the work of private entities (like Excela), and supervised the general development of this information technology infrastructure.

**D.  Plaintiffs' Claims Are for or Relate to Acts Under Color of the Federal Office.**

53. Any single claim is independently sufficient to satisfy the "for or relating to" requirement under Section 1442(a)(1). *See, e.g.*, *Moore*, 25 F.4th at 35.

54. All that is needed is "for there to be a connection or association between the act in question and the federal office." *Papp*, 842 F.3d at 813.

55. That low bar is clearly met here.

56. Plaintiffs directly challenge Excela's website analytics practices, as well as its alleged tracking of online behaviors through source code and cookies and use of marketing companies such as Facebook to promote online patient engagement.

57. The Meaningful Use program envisions these activities, as evidenced by the federal government's own use of these codes and third parties for its Medicare website.

58. In like circumstances, courts have held that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *See, e.g.*, *UPMC*, 2020 WL 4381675, at *6 (holding that the UPMC's participation in the Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3

(N.D. Ohio Oct. 30, 2020) ("Because [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

59. In *UPMC*, as in this case, plaintiffs sought redress under state law for UPMC's alleged disclosure of Plaintiff's personally identifiable information to third parties for Internet marketing purposes without their knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The *UPMC* court focused on both the portal and the public website as being ways of furthering the government's goal of increasing patient engagement with electronic health records. *Id.* at *6 ("UPMC, as a participant in the Meaningful Use Program, receives incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria."). The *UPMC* court also emphasized that "it is not necessary that the complained-of conduct be done at the specific behest of the federal superior," and "any dispute about whether the allegedly wrongful conduct was outside the scope the private entity's duties is the very thing that should be left to a federal court to decide." *Id.* at *7. A private entity "need only show that the allegations in the complaint are directed at the private entity's efforts to assist a federal superior." *Id.*

60. Here, as in *UPMC*, "[t]here is plainly a connection or association between [Excela's alleged] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id.*

### E. Excela Raises Colorable Federal Defenses to Plaintiff's Claims.

61. The final requirement for removal under 42 U.S.C. § 1442(a)(1) is a low bar and requires only that the defendant make an assertion that is "defensive" and "based in federal law." *Mesa v. California*, 489 U.S. 121, 129–30 (1989).

62. A "colorable federal defense" need not be "clearly sustainable," but rather, is sufficient unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37; *accord Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992) ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.")

63. By way of illustration and without limitation, Excela has at least two colorable federal defenses to the claims at issue here that satisfy this requirement.

64. First, Plaintiffs specifically refer to federal law – including federal regulations and a DHHS bulletin – to describe Excela's alleged duty of confidentiality involving PHI and to describe the scope of the PHI that allegedly was shared. *See* Compl. ¶¶ 126–27, 188, 198–99, 206, 211.

65. Thus, in response to Plaintiffs' repeated claims that "protected health information" was disclosed, Excela will argue that the information purportedly disclosed *(i.e.*, IP addresses and other web metadata) is outside of the purview of PHI protected by federal law.

66. In an analogous case against numerous health care providers, the United States District Court for the Northern District of California has held that the information identified by Plaintiffs' here is not PHI. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element.

67. Second, to the extent that they ever could allege a viable cause of action under Pennsylvania law, Excela will argue that federal law preempts Plaintiff's common law claims for alleged invasions of privacy and breach of fiduciary duty. *See* Compl. ¶¶ 272–309; *UPMC*, 2020 WL 4381675 at *7.

68. Because each of the requirements of the Federal Officer Removal statute is satisfied, removal to this Court is proper.

## REMOVAL PROCEDURES

69. Excela files this Notice of Removal within thirty days of receiving the Complaint on April 18, 2023. 28 U.S.C. § 1446(b).

70. Excela attaches as a copy of all process, pleadings, orders, and other documents" currently on file in the state court, including Plaintiffs' Complaint, attached as **Exhibit A** hereto. *Id.* § 1446(a).

71. Excela will promptly give written notice to all adverse parties and the clerk of the Court of Common Pleas of Westmoreland County. *Id.* § 1446(d).

## CONCLUSION

For the forgoing reasons, Defendant Excela Health hereby removes this action, *John Doe I v. Excela Health*, Civ. No. 23CI01410 (Ct. Comm. Pl. Westmoreland Cty.), to this Court from the Court of Common Pleas of Westmoreland County, Pennsylvania, pursuant to 28 U.S.C. § 1442.

Dated: May 17, 2023                                     **BAKER & HOSTETLER LLP**

*/s/ Edward J. McAndrew*
Edward J. McAndrew (PA Bar No. 77103)
1735 Market Street
Suite 3300
Philadelphia, PA 19103-7501
Telephone: 215.568.3100
Facsimile: 215.568.3439
Email: emcandrew@bakerlaw.com

*Attorney for Defendants Excela Health, Excela Health Holding Company, Inc., Excela Health Physician Practices, Inc., Latrobe Area Hospital Inc., Westmoreland Regional Hospital, and Frick Hospital*
