IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, JAMES DOE, MONICA GALLEY-KELLER, and COLLEEN ZUFALL, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>EXCELA HEALTH and EXCELA HEALTH HOLDING COMPANY, INC.,<br><br>      Defendants. | Case No. 2:23-cv-00833-RJC<br><br>Judge Robert J. Colville |

## STIPULATED ORDER ON ESI PROTOCOL

Before the Court is a stipulation for the entry of an Order governing the discovery of electronically stored information ("ESI") in the above-referenced matter. The Court having reviewed the stipulation, hereby orders the following:

1) **PURPOSE**

This Stipulated Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules for this Court, and any other applicable orders and rules.

2) **GENERAL PRINCIPLES**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

Nothing in this Stipulated Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties do not waive any objections as to

the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties for good cause shown. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure and this Court's Local Rules governing discovery disputes.

This Stipulated Order may only apply to the parties in this matter.

**3)    DEFINITIONS**

a.    "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in the Federal Rules of Civil Procedure. The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI, as defined herein.

b.    "Electronic Document or Data" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g. Microsoft Word), computer presentations (e.g. PowerPoint slides), spreadsheets (e.g. Excel), image files (e.g. PDF), chat applications, text messages, and other ephemeral data sources.

c.    "Hard-Copy Document" means Documents existing in paper form at the time of collection.

d.    "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is .xls or .xlsx.

e.    "Near-Native Format" means and refers to the format of ESI that preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format, including where redactions to an otherwise Native Format item are made. For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of

individual e-mail messages. Static images are not near-native formats for production of any form except Hard-Copy Documents.

  f. "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

  g. "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

  **4)** **PRESERVATION**

The parties have discussed their preservation obligations and preservation needs, and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

  1. The parties shall abide by their common law obligations to preserve relevant documents and information;

  2. Pursuant to section 5 below, the parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "Compliance head," "IT manager," and "marketing manager." The parties may add or remove proposed custodians;

  3. The parties will meet and confer regarding the custodians for whom ESI will be preserved;

**5)      ESI DISCLOSURES**

In conjunction with negotiations on discovery requests, each party shall disclose within a reasonable amount of time:

1.      Custodians. The names, title, and roles of custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, and the subjects of discoverable information they are likely to possess.

2.      Non-custodial Data Sources. A list of non-custodial data sources (e.g., shared drives, servers, internal messaging applications, online storage such as Dropbox or Google Drive,), if any, likely to contain discoverable ESI.

3.      Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.      Inaccessible Data. To the extent that a party wishes to exclude any categories of documents and ESI from preservation or production on the basis of proportionality or undue burden, the party will disclose the document category and specify the extent of the burden, and the parties will meet and confer in an effort to resolve the issue.

5.      Documents and ESI from identified potentially relevant custodial and non-custodial data sources will be preserved pending identification of data to be produced in this litigation.

**6)      SEARCH METHODOLOGY**

The parties agree that, in responding to initial requests for production of documents, or earlier if appropriate, they will meet and confer about methods to search and cull ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, such as whether to use search terms.

If search terms are requested by the requesting party, the parties must meet and confer in good faith regarding search terms and queries, file types and date restrictions, data sources and custodians. The parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the producing party providing hit count reports. The producing party may

identify each search term or query returning overbroad results demonstrating the overbroad results and provide a counter proposal as to revised searches or queries. In the event the parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts.

If a Party elects to use technology-assisted review, continuous-active learning, or other advanced technology-based analytics to cull unstructured ESI, the parties will meet and confer regarding the parameters that will apply. For the avoidance of any doubt, a producing party is at liberty to use any technology tool for the purpose of prioritization and/or expediting the review of their own material, so long as the tool is not used for culling of material.,.

To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the requesting party. Upon review of the exported electronic file(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

A producing party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

7) **PRODUCTION FORMATS**

**Principles applicable to all productions of ESI and hard-copy documents**

    a.    The parties agree to make rolling productions.

    b.    Documents will be produced to the requesting party in the formats addressed below under "Principles applicable to ESI" and "Principles applicable to hard-copy documents."

      c.      Each document file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

      d.      Entire Document families must be produced, even if only the parent email or an attachment to an email is responsive. Documents and files included in electronic documents (e.g., emails, chats) as hyperlinks or links will be produced as a parent-child relationship to the extent technically feasible.

      e.      The full text of each electronic document shall be extracted or OCRed ("Extracted Text") and produced in a text file. Document level extracted text or OCR for documents without extracted text will be provided by the producing party for every record, including for scanned hard copy documents as described above. Extracted text will not be provided for electronic documents that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

      f.      The parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

      g.      The parties agree that this Stipulated Order does not preclude a party from requesting the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

      h.      Confidentiality: The parties will enter into a protective order in this matter which specifies various confidentiality treatment levels for use in this case. The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left

blank.  The producing party will brand any confidentiality endorsement in a corner on any PDFs or TIFF images representing the produced item.  Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

  **Principles applicable to ESI.**

  i. The parties agree that, except as provided herein or otherwise agreed upon by the parties, ESI shall be produced in PDF or single-page Group IV TIFF, 300-dpi, or native format as outlined herein. Such productions shall be accompanied by Opticon and IPRO load files (or other generally acceptable load file format) that contains metadata fields identifying natural document breaks and also includes companion OCT and/or extracted text files. Each PDF, native, or TIFF file shall be given a unique file name that matches the Bates number label on first page of the document.

  j. Documents with hidden content, such as spreadsheets or presentations, shall be produced in native with all content unhidden and notes displayed. If it must be produced in TIFF, it shall be processed with all content unhidden and any notes displayed on the TIFF image.  The parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

  k. If a document is more than one page, the parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document.

  l. The Parties agree to produce documents using the Eastern Standard Time Zone.

  m. A producing party will de-duplicate electronic documents and will not produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform.  However, family relationships will be maintained and only exact email family groups,

including email duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the Producing Party may utilize a separate "All Custodians" field which identifies all custodians of the subject document.

      n.      The parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

      o.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

      p.      The original native files, or near-native files as appropriate, should be produced in addition to a single-page PDF (or TIFF) placeholder for each document. The placeholder should be endorsed with "Native Format Document," or equivalent, and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents. For documents whose native format is MS Power Point, the original native files shall be produced with any comments and color preserved. The produced native file should be named with the beginning Bates numbers assigned to that document. The parties will meet and confer upon the other types of files that are not easily converted to image format and will therefore be produced in native format.

q. The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

r. Documents containing color need not be produced in color in the first instance, provided, however, that the producing party shall retain a copy of produced hard copy documents in color. However, if good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth. Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

r. Email thread analysis may be used to reduce the volume of emails reviewed and produced, provided that the produced emails include all responsive information from a thread, including attachments (regardless of their placement in the email thread) and bibliographic information. Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "All Custodians" field included in the data load file. The receiving party reserves the right to request lesser included emails for completeness under the evidentiary rules and for good cause shown.

**Principles applicable to hard-copy documents.**

s. The parties agree that documents existing in hard copy form should be produced as PDF or single-page Group IV, 300-dpi TIFF format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format). Each PDF or TIFF file will be given a

unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, and (c) custodian name, to the extent available. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

 t. The parties agree that documents existing in hard copy form may be produced in searchable PDF or TIFF if the parameters in paragraph (s) are unduly burdensome and not proportionate to the needs of the case. Each PDF or TIFF file will be given a unique file name that matches the Bates number label on the first page of the document.

 u. The parties will undertake best efforts to unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

 v. Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

 w. Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

 **8)** **DOCUMENTS PROTECTED FROM DISCOVERY**

The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Attorney work product created by Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (b) Internal communications within Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (c) Communications between Outside Counsel and the party they represent regarding this litigation after the filing of the first complaint. The parties agree to confer regarding other categories of information that may be excluded from logging requirements.

The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege log and will exchange information regarding

claims of privilege and/or work product protection within 30 days of a production. The parties will meet and confer to determine a different timeline and/or format for production of a log, if necessary. For documents and ESI that have been withheld as privileged, the withholding party shall provide a metadata privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed), the document's Bates numbers or other unique identifier, and a description of the nature of the privileged or protected material in such a way that will enable other parties to assess the claim.

Documents redacted for privilege need not be logged as long as (a) for emails, the bibliographic information is not redacted and (b) for non-email documents, the redaction is noted on the PDF (or TIFF image).

The parties reserve the right to request additional information regarding individual documents on the privilege log.

    a.    **Limitations and Non-Waiver**

Pursuant to Ind. R. Evid. 502(d), the inadvertent disclosure or production of a privileged or work-product-protected documents, electronically stored information, or information, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained within this paragraph is intended to or shall serve to limit a party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, confidentiality, and/or segregation of privileged and/or protected information before production. A Party seeking to claw privileged documents back shall follow the procedures outlined in Exhibit B.

a.	Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

b.	Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

STIPULATED TO:

*/s/ Raina Borrelli*
Raina C. Borrelli (*pro hac vice*)
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775

George Bochetto, Bar. No. 27783
David P. Heim, Bar. No. 84323
John A. O'Connell, Bar. No. 205527
Ryan T. Kirk, Bar No. 329492
BOCHETTO & LENTZ, P.C.
1524 Locust St.
Philadelphia, PA 19102
Tel: (215) 735-3900

Foster C. Johnson (*pro hac vice*)
Weining Bai (*pro hac vice*)
AHMAD, ZAVITSANOS, & MENSING, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
fjohnson@azalaw.com
wbai@azalaw.com

Bart D. Cohen, Bar No. 57606
Lawrence J. Lederer, Bar. 50445
John Roddy (*pro hac vice forthcoming*)
BAILEY GLASSER LLP
1622 Locust St.
Philadelphia, PA 19103
Telephone: (215) 257-9420
bcohen@baileyglasser.com
llederer@bailyglasser.com
jroddy@baileyglasser.com

*Counsel for Plaintiff and the Proposed Class*

Dated: May 9, 2024

*/s/ Carrie Dettmer Slye*
Carrie Dettmer Slye (*pro hac vice*)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Telephone: 513-852-2626
cdettmerslye@bakerlaw.com

Edward J. McAndrew (PA No. 77103)
BAKER & HOSTETLER LLP
1735 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: 215-564-8386
emcandrew@bakerlaw.com

*Counsel for Defendant*

APPROVED AND SO ORDERED.   5/14/24

*s/Robert J. Colville*
_____
Honorable Robert J. Colville
United States District Judge

# EXHIBIT A

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID/IMAGEFILENAME | Unique identifier |
| PRODBEG | First Page document number |
| PRODEND | Last Page document number |
| PRODBEGATT | First Page of Family group range number |
| PRODENDATT | Last Page of Family group range number |
| ALL CUSTODIAN | All record owners of the file from whom the data was collected, including copies identified during global deduplication |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| THREADID | Identification of email threads |
| PARENTID | Identification of email parent relationships |
| FILENAME | Name of file |
| DATESENT | Email sent date |
| TIMESENT | Email sent time |
| DATERECEIVED | Email received date |
| TIMERECEIVED | Email received time |
| DATESAVED | Save date |

| | |
|---|---|
| TIMESAVED | Save time |
| DATELASTPRINT | Date last printed |
| TIMELASTPRINT | Time last printed |
| FILEEXT | File extension of document |
| AUTHOR | Author information as derived from the properties of the document |
| COMPANY | Company that supplied the ESI in its raw format |
| TITLE | Title from document metadata (if applicable) |
| DATECREATED | Date document was created on non-emails |
| TIMECREATED | Time document was created on non-emails |
| DATEMODIFIED | Last date document was modified on non-emails |
| TIMEMODIFIED | Last time document was modified on non-emails |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |
| NATIVELINK | Path to email or native file document (if applicable) |
| ORIGINALPATHFOLDER | Path including filename |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. |

**EXHIBIT B – CLAWBACK PROCEDURES**

Any party who has received a notification of disclosure of privileged documents from a producing party shall follow the following procedure to ensure all copies of recalled privileged documents are appropriately returned, sequestered, or destroyed from the receiving party's possession:

i. Locate each recalled document and return, sequester, or destroy the record from the database;

ii. If the document was produced in a write-protected format, the party seeking to recall the document shall, at its election, either (i) provide a replacement copy of the relevant production from which the document has been removed, in which case the receiving party shall destroy and render unusable the original production media; or (ii) allow the receiving party to retain the original production media, in which case the receiving party shall take steps to ensure that the recalled document will not be used; and

iii. Written confirmation that the recall of privileged documents under this procedure is complete.